UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHARLES D. WHEAT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:06CV00874 ERW |
| ) | |
| CAMERON DANIEL, et al. ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendants Cameron Daniel, Dana Thompson, Robert Newsom, and Marie Clark's Motion to Dismiss [doc. #30], Defendant Steve Long's Motion to Dismiss [doc. #41], and Defendant Donna White's Motions to Dismiss [docs. #72].

## I. BACKGROUND FACTS[1]

Plaintiff is currently confined to the custody of the Missouri Department of Corrections serving two concurrent 45 year sentences for the 1977 convictions of rape and a crime against nature. Individuals convicted of crimes of a sexual nature are required, under Missouri law, to participate in the Missouri Sex Offender Program ("the Program").[2] The Program consists of two phases. In the Complaint, Plaintiff alleges that he completed Phase I of the program in December 1981. Plaintiff further alleges that on August 25, 1989, Defendant Daniel verbally indicated to a

---

[1] The Court's recitation of the facts is taken from the Plaintiff's complaint. Since this is a Motion to Dismiss, all facts alleged in the complaint are taken as true.

[2] "All persons imprisoned by the department of corrections for sexual assault offenses shall be required to successfully complete the programs developed pursuant to subsection 1 of this section.

1

group of inmates participating in the Program, that all of the group members had successfully completed Phase II of the Program. Plaintiff alleges that Defendant Cameron Daniel (Defendant Daniel), the psychologist assigned to the program at the time Plaintiff participated, singled Plaintiff out and indicated that Plaintiff was required to meet with him two or three more times so that Defendant Daniel could complete a report for the parole board.

Plaintiff alleges that Defendant Daniel submitted a "poor" report to the parole board, notwithstanding Plaintiff's successful completion of Phase II of the Program. This report was placed in Plaintiff's parole file, and reviewed by the Board in considering Plaintiff's eligibility for parole. Plaintiff was eligible and subsequently denied parole in 1990, 1992, 1998, and 2003. It is Plaintiff's contention that each of these denials was a direct result of Defendant Daniel's "poor" report that is a permeant part of Plaintiff's parole file.

Defendant Robert Newsom was a member of Plaintiff's parole board in 1998, and allegedly told Plaintiff that there was no negative information in Plaintiff's parole file. Defendant Cranston Mitchell was the Parole Board chairman at Plaintiff's 1990 parole board review, and Defendant Donna White was a Parole Board Member in 2003. It is unclear from the allegations what Dana Thompson's role was in Plaintiff's allegations, however, she is listed under Count VI of Plaintiff's original complaint, along with other members of Plaintiff's various review panels, therefore the Court assumes that Defendant Thompson was a member of the parole review board.

In Plaintiff's August 13, 2003 parole review, Plaintiff was informed that his file contained negative information regarding his completion of the Program. At this time, it was recommended that in order for Plaintiff to receive parole, he should complete the Program a second time.

Following that parole board hearing, Plaintiff filed a grievance against Defendant Daniel concerning the negative report that he had received, asserting that it contained false information due to Defendant Daniel's racist and abusive attitude towards Plaintiff. Plaintiff was subsequently denied Parole, and denied relief from his grievance request. Plaintiff appealed the decision based on the failure to investigate the allegations in his grievance, and on December 1, 2003, Plaintiff's grievance appeal was denied.

In March, 2004, Plaintiff was transferred from Western Missouri Correctional Center ("WMCC") to Missouri Eastern Correctional Center ("MECC"). Upon transfer to MECC, Plaintiff met with the head IPO,[3] Leah Embly, on March 23, 2004. Plaintiff met repeatedly with Ms. Embly over the next year and a half, in an attempt to correct the effects of the negative, and according to Plaintiff, false report contained within his parole file. Ms. Embly suggested that the Plaintiff contact Mr. LaBundy, chief of sex offender services at Farmington Correctional Center, regarding Plaintiff's unique situation. In the course of this correspondence, Mr. LaBundy represented to Plaintiff that the reason he was not considered for release on his 7/12ths Administrative Parole date, November, 2002, was because Defendant Daniel's report was "equivalent to a termination report, not a negative completion report." *Pl. Compl.*, 12. Mr. LaBundy further recommended that Plaintiff contact his IPO and formally request a second opportunity to complete the Program. Plaintiff followed Mr. LaBundy's advice, and sought the aid of Ms. Embly, in making this formal request. Ms. Embly forwarded copies of the letter and memorandum to the Parole Board, requesting that Plaintiff be given a second opportunity to

---

[3]Plaintiff does not define this term in his complaint, nor is it defined in the subsequent briefing. The Court assumes that it is a position within the personnel structure of the prison.

complete the Program; this request was purportedly denied. Plaintiff then filed a second grievance regarding Defendant Daniel's report.

The Missouri Sexual Offender Program Policy manual ("policy manual") states that completion of the Program is mandatory for parole consideration. Furthermore, the policy manual requires that an inmate be allowed up to three opportunities to complete the program; however, an inmate may be required to wait up to two years before being readmitted. Plaintiff was not given this opportunity due to his "completion" of the program. Plaintiff has since completed two additional classes, anger management and thinking errors, in an attempt to address concerns raised by Mr. LaBundy in his communications with Plaintiff, and to rectify the contents of his parole file. Following the completion of these classes, Ms. Embly submitted a third request to the parole board to direct MOSOP officials to place plaintiff in the Program a second time. Finally, Plaintiff received a response from the Parole Board that he was being referred to MOSOP one year prior to his August, 2008 hearing. However, that decision also stated that there would be no change in Plaintiff's next parole hearing of August, 2008. One interpretation of the letter is that there would be no change, unless the Program should be completed a second time, however, this was not explicitly stated. Plaintiff was transferred to Farmington Correctional Center on February 14, 2006, in order to facilitate completion of the Program. However, he was informed on March 24, 2006, that he would not be placed in Phase I of the two phase Program until approximately December, 2008, four months after his final parole hearing.[4]

**II. PROCEDURAL HISTORY**

---

[4]Plaintiff is scheduled to be released by way of commutation on his Director's release date of May 6, 2010, after serving 9/12ths of his sentence.

On June 5, 2006, Plaintiff filed a seven count complaint against Defendants Daniel, Clark, Newsom, White, Thompson, and Mitchell alleging numerous constitutional violations. On September 25, 2006 the Court conducted a 28 U.S.C. § 1915A review,[5] and dismissed Plaintiff's Complaint as frivolous. The Court held that "[p]laintiff's claims against individual defendants regarding his completion of the Program amount to a claim that he is improperly being denied parole, which is a claim that can be pursued only be means of a petition for writ of habeas corpus." Plaintiff timely filed a Motion to Alter or Amend the Judgment. Upon reconsideration, the Court found that Plaintiff's case should not have been dismissed, to the limited extent that he asserted that "there is false, negative information in his parole file, and that when he asked parole board members if there was any adverse information in his file, he was told that there was not." Accordingly, the Court ordered the Defendants to respond to this claim. *Id.*

On October 12, 2006, Plaintiff filed a motion to amend his Complaint, to add an additional claim and an additional defendant. The Court granted this motion. In the Amended Complaint, Plaintiff contends that Defendant Steve Long violated his Due Process rights by failing to properly and thoroughly investigate the allegations contained in a grievance that Plaintiff submitted to the Department of Corrections while he was incarcerated. This claim remains pending before this

---

[5]
> (a) **Screening**.--The court shall review, before docketing, if feasible, or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. (b) **Grounds for dismissal.**--On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(a)-(b).

5

Court, as well as the narrow claim that Plaintiff's parole file contains incorrect information. A number of the Defendants have now filed Motions to Dismiss which the Court will now address.[6]

### III. MOTION TO DISMISS STANDARD

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, the Court must take all facts alleged in the complaint to be true and must construe the pleadings in the light most favorable to Plaintiff. *Gregory v. Dillard's*, 2007 WL 2067853, *14 (8th Cir. July 20, 2007). The Federal Rules do not require great precision in pleadings. *Id.* at *15. "The 'simplified notice pleading standard' under Fed. R. Civ. P. 8(a) requires only a statement that 'give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on other grounds) (alterations in original)); *see also Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007) ("The statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." (Internal citation and alteration omitted)). "Specific facts are not necessary. . .." *Erickson*, 127 S.Ct. At 2200. However, the factual allegations in the complaint must be more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007); *see also Gregory*, 2007 WL 2067853 at *15.

### IV. DISCUSSION

---

[6]Defendant Cranston Mitchell has not filed a Motion to Dismiss, and therefore any rulings by the Court in this opinion are inapplicable to Defendant Mitchell.

Plaintiff alleges that Defendants violated Plaintiff's 14th amendment Due Process rights[7] and therefore are liable under 42 U.S.C. § 1983. Section 1983 is a remedial statute. It provides that a person acting under "color of any statute, ordinance, regulation, custom, or usage, of a State or Territory or the District of Columbia" is liable for the "deprivation of any rights, privileges, or immunities secured by the Constitution and its laws." 42 U.S.C. § 1983. The statute is "merely a vehicle for seeking a federal remedy for violations of federally protected rights." *Foster v. Wyrick,* 823 F.2d 218, 221 (8th Cir. 1987). In a § 1983 action, two essential elements must be present: (1) the conduct complained of was committed by a person acting under color of state law;[8] and (2) the conduct complained of deprived a plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *DuBose v. Kelly*, 187 F.3d 999, 1002 (8th Cir. 1999). Thus, in evaluating a § 1983 claim, the precise constitutional violation which is alleged must be identified. *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 796 (8th Cir. 1998).

As an initial matter, the Court notes that Plaintiff's claim to correct information in his

---

[7]Plaintiff's remaining allegations allege a violation of due process based on the erroneous information in his parole file that has prevented him from being given a second opportunity to complete the Program, and a claim against Defendant Long for violation of prison grievance procedure.

[8] It is undisputed that the named Defendants whose Motions to Dismiss are before the Court, were acting under color of state law. All were either employees or appointees of the State of Missouri. Defendants White, and Newsom were appointed members of the Missouri Board of Parole during at least one of Plaintiff's parole hearings; Defendant Daniel, as noted, was the Psychologist employed by the State of Missouri to oversee and conduct Phase II of the Program; Defendant Clark was director of the Program in 1989, when Plaintiff was a participant; and Defendant Long was the Assistant Division Director for the Department of Adult Institutions for the State of Missouri in 2003, when Plaintiff filed the grievance that is at issue in this litigation. Further, it is undisputed that all of the alleged violations occurred when the Defendants were acting in their official capacity as employees or appointees of the State of Missouri.

parole file is properly brought under § 1983. The Supreme Court has made clear that challenges to "the very fact or duration of [a prisoner's] physical confinement itself," or actions by prisoners "seeking immediate release or a speedier release from confinement" must be brought under the habeas statute. *Preiser v. Rodriguez,* 411 U.S. 475, 498-499 (1973). However, § 1983 challenges remain available when "success in the action would not necessarily spell immediate or speedier release for the prisoner." *Wilkinson v. Dodson,* 544 U.S. 74, 81 (2005). "If the district court determines that plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Heck v. Humphrey,* 512 U.S. 477, 487 (1994) (emphasis in original). Furthermore, the Plaintiff in the case at bar is not seeking damages, but rather injunctive relief to either correct his parole file, or allow him to participate a second time in the Program. *See Wilkinson*, 544 U.S. at 81 ("[P]risoner's claim for an injunction barring *future* unconstitutional procedures did *not* fall within habeas' exclusive domain.").

**A. Plaintiff's Parole File**

The question before the Court is whether Plaintiff has a constitutional right to have the contents of his parole file corrected or a right to repeat the Program, and if so has he alleged sufficient facts to state a claim for relief on this basis. Plaintiff asserts that the negative report submitted in conjunction with the statement that he completed the Program acted like a termination from the Program which prohibited him from being eligible for parole.[9] Plaintiff asserts that Defendant Daniel's report constitutes false information. In addition, Plaintiff asserts that he was incorrectly told that his parole file contained no negative information. Defendants

---

[9] A termination from the Program prevents an inmate, convicted of certain sexual crimes, from being paroled.

dispute that this constitutes false information, sufficient to form the basis of a constitutional claim.[10]

The procedures that a state parole board employs to make parole decisions are generally not required to comport with constitutional standards of fundamental fairness, "[u]nless there is a liberty interest in parole . . . ." *O'Kelley v. Snow,* 53 F3d 319, 321 (11th Cir. 1995) (citing *Slocum v. Georgia State Bd. of Pardons and Paroles,* 678 F.2d 940, 942 (11th Cir. 1982)); *see also Johnson v. Rodriguez*, 110 F.3d 299, 308 (5th Cir. 1997) ("It is . . . axiomatic that because Texas prisoners have no protected liberty interest in parole they cannot mount a challenge against any state parole review procedure on procedural (or substantive) Due Process grounds."). The Eighth Circuit has clearly held that "the current Missouri statutes, standing alone, do not create a liberty interest protected by the due process clause of the Fourteenth Amendment." *Marshall v. Mitchell*, 57 F.3d 671, 672 (8th Cir. 1995); *see also Delay v. Roper,* No. 4:05CV02312 ERW, 2006, U.S. Dist. LEXIS 802, at *1, (E.D. Mo. Jan. 11, 2006) ("The current Missouri parole statutes give the parole board almost unlimited discretion to make parole determinations, *see* Mo.Rev.Stat. §§ 217.655.690, and, therefore, do not create a liberty interest protected by due process.") Therefore, Plaintiff cannot maintain an action challenging the parole procedures that are in place.

Although, Missouri State Parole statutes "create no liberty interest" under state law in the

---

[10]There are currently pending before the Court three Motions to Dismiss filed by the Defendants, with the exception of Defendant Mitchell. Each Motion to Dismiss raises the same arguments as to why the case should be dismissed. Those arguments are summarized as follows: first, Defendants argue that Plaintiff's claims constitute a challenge to his parole eligibility which is properly brought under federal habeas action; and secondly, there is no false information contained within his parole file that could have been considered by the Parole Board. Due to the overlap in the arguments, the Court will address all pending motions simultaneously.

parole boards discretionary decisions, *Marshall*, 57 F.3d at 673, there may be a due process claim based on alleged erroneous contents of Plaintiff's parole file. *Adams v. Agniel*, 405 F.3d 643, 645 (8th Cir. 2005). In *Adams*, the Eighth Circuit stated:

> There is reason to question whether a prisoner has any . . . basis for a constitutional claim to correct information in a prole file . . . , but that issue has not been briefed and argued in this case. Assuming, *arguendo*, that such a claim might be viable in an extreme case, Adams [plaintiff] attached exhibits to his complaint that refute any claim that the State acted arbitrarily, or knowingly used false information, to deny Adams parole.

405 F.3d at 645. The court looks to whether the information in the prisoner's parole file is actually false, and to whether the parole board acted arbitrarily, or knowingly used false information in making their parole decision.

In the case at bar, the Court finds that the facts alleged by Plaintiff, if true, would support a finding that the parole board acted arbitrarily. Plaintiff has alleged facts that show Plaintiff was treated as if he had not successfully treated the Program, contrary to verbal information he had been given saying that he had completed the Program. Plaintiff has alleged that he was told that Defendant Daniel's report was equivalent to a termination of Plaintiff from Phase II of the Program. If the Parole Board relied on Defendant Daniel's report in refusing to provide Plaintiff a second opportunity to fulfill the lawful requirement to complete Phase I and II, such action would be arbitrary. The Eleventh Circuit, in deciding whether a prisoner had a right to correct information in his parole file, found that the actions of the Alabama prison system would be constitutionally offensive if the prison regulation "is administered maliciously or in bad faith." *Monroe v. Thigpen*, 932 F.2d 1437, 1441 (11th Cir. 1991). Furthermore, the Eleventh Circuit found that a parole board's discretion, as granted in that case by the Alabama Code, "cannot be read as granting the Board the discretion to rely upon false information in determining whether to

grant parole." *Id.* at 1442. If the Parole Board relied on Defendant Daniel's negative report, the Missouri Parole Board treated Plaintiff as having failed to complete the Program, and therefore as ineligible for parole. If this occurred, as pled, such arbitrary action was compounded by the Board's repeated refusal to allow Plaintiff a second opportunity to take part in the Program. If he had been terminated from the Program, he was lawfully entitled to a second opportunity to succeed. Missouri's parole statute, which is substantially similar to Alabama's statute, gives the parole board discretion; however, such discretion is not without limits. The Board's reliance upon Defendant Daniel's false report, if that occurred, compounded by their refusal to allow plaintiff a second chance at completion of the Program, raises to the level of a due process violation, beyond the discretion provided by the statute.

However, this finding is somewhat untimely, as Plaintiff has now been permitted to retake the Program, but with one final hurdle. Plaintiff has been assigned to a group which is to begin the Program in approximately December, 2008. Plaintiff is presently scheduled for his next parole hearing in August, 2008. There is no reason to believe that Plaintiff will be favorably considered for parle without successfully completing the Program. The Court must now decide whether Plaintiff, if all facts alleged are true, is entitled to an injunction to enroll in the Program, prior to his August, 2008, parole hearing. The Plaintiff is not seeking any compensation for past action, but rather injunctive relief requiring the Defendants to permit Plaintiff to participate in the Program. This type of relief is clearly permitted under *Wilkinson*. 544 U.S. at 79 ("They [prisoners] could also seek by way of ancillary relief, an otherwise proper injunction enjoining the *prospective* enforcement of invalid prison regulations." (internal quotation omitted)). The policy manual provides that a prisoner is to be given a second opportunity to retake the Program within

11

two years. Plaintiff first participated in the Program in 1989, therefore, in accordance with the State's own procedure, if Plaintiff's allegations are correct, Plaintiff is entitled to immediate participation in the program, which would be prior to his August, 2008, parole hearing. Therefore, the Court finds that on this basis, the Plaintiff has stated a claim upon which relief may be granted, and therefore Defendants' Motions to Dismiss should be denied.

### B. Grievance

Secondly, Plaintiff is claiming a constitutionally protected right in having his grievance heard and investigated according to the guidelines set forth by the Missouri Department of Corrections. This Count is against Defendant Steve Long only. On this claim, the Court must determine whether a prisoner has a constitutionally protected liberty interest in the Department of Corrections following the their own internal guidelines and procedures for investigating inmate grievances. The Eighth Circuit has held that "there is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations." *Phillips v. Norris,* 320 F.3d 844, 847 (8th Cir. 2003) (*citing Kennedy v. Blankenship,* 100 F.3d 640, 643 (8th Cir. 1996). Additionally, "[a prison's] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the protections envisioned by the fourteenth amendment." *Buckley v. Barlow,* 997 F.2d 494, 495 (8th Cir. 1995) (*quoting Azeez v. DeRobertsis,* 568 F.Supp. 8, 10 (N.D. Ill. 1982). Since there is no liberty interest protected by the constitution in the procedure by which prison officials investigate and subsequently rule on inmate grievances, it follows that Plaintiff's claim asserted against prison official Steve Long is dismissed.

### V. CONCLUSION

The Court finds that Plaintiff has stated a claim for relief, based on the Defendants Daniel, Thompson, Newsom, Clark, Mitchell, and White's failure to permit Plaintiff to retake the Program within the two years provided by the MOSOP policy manual which is intended to implement Missouri Statute requiring sexual offenders to complete certain programs before being eligible for relief. Therefore Defendants Daniel, Thompson, Newsom and Clark's Motion to Dismiss is denied, as is Defendant Donna White's Motion. However, Defendant Steve Long's Motion to Dismiss is granted, as Plaintiff has failed to state a claim based on the denial of his prison grievance. All claims against Defendant Steve Long are dismissed with prejudice.

## VI. Other Pending Motions

### A. Motions to Compel

Also pending before the Court are two Motions to Compel discovery, filed by Plaintiff [docs. ##80, 82]. This Court, on April 10, 2007, ordered that all discovery be stayed, pending the resolution of Defendants' Motions to Dismiss. Plaintiff subsequently filed two Motions to Compel. These two Motions are denied as moot. The stay on discovery is now dissolved, and the parties will continue to pursue discovery on Plaintiff's remaining claim; that Defendants have improperly denied Plaintiff access to the Program in a timely manner in accordance with the requirements of the Missouri Parole statutes. Plaintiff's Motion to Lift the Stay [doc. #95] is also denied as moot.

### B. Motion to Amend

Also pending before the Court is Plaintiff's Motion Requesting that Defendant Bruce Harry be served with the summons and a copy of the complaint [doc. #86], and Plaintiff's Motion for Leave to Amend the Complaint to add a Defendant [doc. #87]. Notwithstanding the order in

which these two motions were filed, it is necessary to address the Motion to Amend first, as it requests that the Court add Bruce Harry ("Mr. Harry") as a Defendant in this matter. If Plaintiff is not granted leave to amend, then Mr. Harry need not be served in this matter.

Plaintiff asserts in his request for leave to amend, that upon the receipt of certain documents from his Parole file, he discovered a psychiatric evaluation conducted by Mr. Harry in November, 1989, which incorporated many of the false statements set forth in Defendant Daniel's report. Mr. Harry was a psychiatrist employed by the Missouri Board of Probation and Parole at the time that Plaintiff was first evaluated for Parole eligibility. Plaintiff further asserts that the use of that information contained in Mr. Harry's report by the Parole Board is unlawful, as it is unlawful for the Parole Board to rely upon false information in determining whether an inmate should be granted parole. Defendants oppose Plaintiff's motion on the sole basis that Plaintiff failed to attach an amended complaint contemporaneously with his motion and therefore his motion should be denied.

Under the Federal Rules of Civil Procedure, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave to amend shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). In the case at bar, Plaintiff has stated a valid reason for failing to name Mr. Harry as an original Defendant; Plaintiff was not aware of Mr. Harry's negative report until he was provided with certain documents from the Defendants. Furthermore, Defendants have not provided any reason why allowing the amendment at this time would be prejudicial towards them. Therefore, the Court orders that Mr. Harry be added as a named Defendant, and that Mr. Harry be served in this matter.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Daniel, Thompson, Newsom and Clark's Motion to Dismiss [doc. #30] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Steve Long's Motion to Dismiss [doc. #41] is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant Donna White's Motion to Dismiss [doc. #72] is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel Responses to Plaintiff's First Set of Interrogatories [doc. #80] is **DENIED as moot.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel Defendants to Produce Additional Evidence [doc. #82] is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion Requesting that Defendant Bruce Harry be Served with the Summons and a Copy of the Complaint [doc. #86] is **GRANTED**. Due to Plaintiff's incarceration, the Clerk's Office shall effect service of Process for Plaintiff in this matter upon receipt of Plaintiff's Amended Complaint.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to Amend [doc. #87] is **GRANTED.** Plaintiff shall file an Amended Complaint with this Court no later than **October 9, 2007**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to the Court to Rescind its Order Granting Defendants' Motion to State Discovery [doc. #95] is **DENIED as moot**.

Dated this 18th day of September, 2007.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE